Docket No. 100841.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

BETTY J. HINES, as Ex'r of the Estate of Beverly Tutinas, Appellee, v. THE DEPARTMENT OF PUBLIC AID, Appellant.

*Opinion filed May 18, 2006.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, McMorrow, Fitzgerald, and Garman concurred in the judgment and opinion.

Justice Kilbride took no part in the decision.

**OPINION**

This appeal arises from the administration of the estate of Beverly J. Tutinas, who died in 2001 leaving a home valued at $69,641.89 and an automobile worth $2,000. A single issue is presented for our review: May the Department of Public Aid[1] assert a claim against Beverly's estate to obtain reimbursement of $61,154.48 in Medicaid payments made on behalf of her husband, who predeceased her? The circuit court of Rock Island County determined that such a claim was permissible under state and federal law. The appellate court reversed and remanded, with one justice dissenting. 358 Ill. App. 3d 225. We granted the Department's petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we now affirm the judgment of the appellate court.

The relevant facts are not in dispute. Beverly and Julius Tutinas were married for more than 48 years. They resided together in Moline in a home to which they held joint title. The couple also held joint title to an automobile. They had no children.

In 1994, Julius' declining health required that he be cared for in a nursing home. On July 7 of that year, the Department of Public Aid approved Julius for medical assistance pursuant to Title XIX of the Social Security Act, commonly known as the Medicaid Act (42 U.S.C. §1396 *et seq.* (2000)).

Julius began receiving Medicaid payments in August of 1994. Those payments continued until he died in 1997 at the age of 66. The payments totaled $61,154.48.

No probate estate was created for Julius following his death. Because Julius and his wife, Beverly, held the marital home and their automobile in joint title, full ownership of the home and car passed to Beverly when Julius died. Beverly lived on for several more years, eventually passing away in May of 2001. Unlike Julius, Beverly neither applied for nor received Medicaid payments.

---

[1]Since this action commenced, the name of the Department of Public Aid has changed. Effective July 1, 2005, it became known as the Department of Healthcare and Family Services.

Beverly left a will when she died naming her sisters, Shirley A. Nelson and Betty J. Hines, as coexecutors. Beverly's will was admitted to probate by the circuit court of Rock Island County on May 25, 2001, and letters of office were issued to Betty Hines as independent executor (see 755 ILCS 5/28–2 (West 2002)).

Beverly's estate consisted of only two items, her home and the automobile she had once held in joint title with Julius. Both items were liquidated during the administration of her estate. The home was sold for $69,641.89, the car for $2000.

In July of 2001, the Department of Public Aid filed a claim against the estate to recover the $61,154.48 in Medicaid payments it had made on behalf of Julius between 1994 and 1997. Betty Hines, acting in her capacity as executor, filed a notice that the claim was being disallowed. The Department of Public Aid challenged the rejection of its claim on the grounds that it was contrary to the applicable provisions of the Probate Act of 1975 (755 ILCS 5/1–1 *et seq.* (West 2002)). Faced with that challenge, Hines, as executor, petitioned the circuit court pursuant to section 28–5 of the Probate Act (755 ILCS 5/28–5 (West 2002)) for instructions regarding the claim.

Following briefing and a hearing, the circuit court entered a detailed order, recounting the pertinent facts of the case and reviewing the governing law. In the circuit court's view, section 5–13 of the Public Aid Code (305 ILCS 5/5–13 (West 2002)) and 89 Ill. Adm. Code §102.200, an administrative regulation based on that statute, permitted the Department to seek reimbursement from Beverly's estate for the Medicaid payments it had made on Julius' behalf. The circuit court further concluded that the aforementioned provisions of Illinois law do not conflict with and are not preempted by 42 U.S.C. §1396p(b), the section of the Medicaid Act pertaining to adjustment or recovery of Medicaid payments.

Hines appealed. After determining that it had jurisdiction to hear the appeal pursuant to Supreme Court Rule 304(b)(1) (155 Ill. 2d R. 304(b)(1)),[2] the appellate court concluded that 42

---

[2]Rule 304(b)(1) authorizes appeals from "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which

U.S.C §1396p(b) does not permit the Department to seek recovery from the estate of a Medicaid recipient's surviving spouse under the facts present here and that the provisions of Illinois law invoked by the Department in this proceeding exceed the authority granted by the Medicaid Act. It therefore held that the Department's claim against Beverly's estate must be dismissed. Accordingly, it reversed the judgment of the circuit court and remanded for further proceedings. 358 Ill. App. 3d at 233. One justice dissented.

The Department petitioned for leave to appeal. 177 Ill. 2d R. 315. That petition was allowed, and the matter is now before us for a decision on the merits. As indicated at the outset of this opinion, the sole question before us is whether the Department's claim against Beverly's estate was permissible under the Medicaid Act and the state statutes and regulations implemented pursuant to that Act. This issue presents a question of law, which we review *de novo*. *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 80 (2005).

In undertaking our review, we begin with a brief discussion of the purposes and operation of the Medicaid Act. The Act, which originated in the 1960s, created a cooperative program under which the federal government reimburses state governments for a portion of the costs of providing medical assistance to low income groups. *Gillmore v. Illinois*

---

finally determines a right or status of a party. 155 Ill. 2d R. 304(b)(1). Committee comments to this rule indicate that orders allowing or disallowing a claim fall within its provisions. See *In re Estate of Stepp*, 271 Ill. App. 3d 817, 819 (1995). Reasoning that the circuit court's order had the effect of allowing the Department's claim, the appellate court determined it possessed jurisdiction under this rule to review that order on the merits. We agree.

*Department of Human Services*, 218 Ill. 2d 302, 304-05 (2006). States are not required to participate in the Medicaid program. Once they elect to do so, however, they must design their own plans and set reasonable standards for eligibility and assistance. See 42 U.S.C. §1396(a)(17) (2000). Such plans and standards must comport with the Medicaid Act and the regulations promulgated thereunder by the United States Department of Health and Human Services. See *Cohen v. Quern*, 608 F. Supp. 1324, 1326 (N.D. Ill. 1984); *Smith v. Miller*, 665 F.2d 172, 175 (7th Cir. 1981).

The Act provides that participating states must designate an agency to administer their Medicaid plans. See 42 U.S.C. §1396(a)(5) (2000); 42 C.F.R. §431.10(a) (2003). The agency designated by Illinois to administer its Medicaid plan is the Department of Public Aid. See 305 ILCS 5/2–12(3) (West 2002); *American Society of Consultant Pharmacists v. Garner*, 180 F. Supp. 2d 953, 958 (N.D. Ill. 2001).

Under the Act, two types of low income groups are eligible for medical assistance: the categorically needy and the medically needy. Categorically needy persons are those who are automatically eligible to receive cash grants under one of the general welfare programs–the Aid to Families with Dependent Children program (AFDC) (42 U.S.C. §601 *et seq.* (2000)) or the Supplemental Security Income for the Aged, Blind, or Disabled program (SSI) (42 U.S.C. §1381 *et seq.* (2000)). See 305 ILCS 5/5–2(1) (West 2002); 42 C.F.R. §435.100 *et seq.* (2003). The medically needy are persons who are ineligible to receive cash grants under AFDC or SSI because their resources exceed the eligibility threshold for those programs, but who still lack the ability to pay for medical assistance. See 305 ILCS 5/5–2(2) (West 2002); 42 C.F.R. §435.300 *et seq.* (2003). People who fall into the second category are called MANG (Medical Assistance-No Grant) recipients. See 89 Ill. Adm. Code §120.10(a) (Conway-Greene CD-ROM March 2002). *Gillmore v. Illinois Department of Human Services*, 218 Ill. 2d at 304-05. Julius was a MANG recipient.

To qualify for Medicaid as a MANG recipient, a person must have low income and low assets, and the person must "spend

down" any resources over the statutory and regulatory limits. See 89 Ill. Adm. Code §120.10(d) (amended at 24 Ill. Reg. 7361, eff. May 1, 2000). "Spend down" requirements pose an obvious hardship to the spouses of medical assistance recipients, who face the prospect of being left with virtually nothing to live on once the couple's income and resources are reduced to the level necessary to qualify for Medicaid. To ameliorate that hardship, Congress enacted the Medicare Catastrophic Coverage Act of 1988 (MCCA) (Pub. L. No. 100–360), which includes provisions to protect, financially, the spouse who was not receiving medical assistance. These provisions, commonly called the spousal impoverishment provisions, allow the spouse to retain a certain level of resources and income and protect those amounts from use as payment for an institutionalized spouse's nursing home care. See 42 U.S.C. §1396r–5 (2000); *Cleary v. Waldman*, 167 F.3d 801, 805 (3d Cir. 1999).

The Medicaid Act affords an additional element of financial protection to the families of Medicaid recipients by limiting the circumstances in which a state may seek reimbursement for the payments it made on the recipient's behalf. The Act, as amended by the Omnibus Budget Reconciliation Act of 1993 (OBRA) (Pub. L. No. 103–66, §13612(a)), expressly provides that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made," except in three specified circumstances. 42 U.S.C. §1396p(b) (2000). Only one of those exceptions is relevant here. It is set forth in subsection (1)(B) of the statute, which provides:

> "In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate ***." 42 U.S.C. §1396p(b)(1)(B) (2000).

The statute further provides that any adjustment or recovery under the foregoing paragraph may only be made after the death of the Medicaid recipient's surviving spouse, if he or she has one. 42 U.S.C. §1396p(b)(2) (West 2000).

Congress has determined that for the purposes of 42 U.S.C. §1396(b), the definition of a deceased recipient's estate *shall* include all real and personal property and other assets included within the individual's estate as defined by the particular state's probate law. 42 U.S.C. §1396p(b)(4)(A) (2000). Where the deceased recipient received or is entitled to receive benefits under "a long-term insurance policy in connection with which assets or resources in the manner described in clause (ii) [of subsection (b)(1)(C) of the statute], the definition of the deceased recipient's estate *shall* also include:

"any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." 42 U.S.C. §1396p(b)(4)(B) (2000).

In addition, the Act provides that a state *may, at its option*, adopt this second, more expansive definition of estate to all cases, not just those involving long-term care insurance policies. 42 U.S.C. §1396p(b)(4)(B) (2000).

Under the foregoing provisions, the Department clearly had a right to seek reimbursement from Julius' estate, as defined by Illinois law, following Beverly's death. That, however, is not what it is attempting to do. Through this action, it seeks reimbursement from the estate of Beverly, his surviving spouse, even though she, herself, received no Medicaid payments.

Nothing in the Medicaid Act authorizes such recourse. As we have just indicated, the Act provides three and only three exceptions for when the state may seek reimbursement for costs correctly expended on behalf of a Medicaid recipient. All are specifically directed to the estate of the recipient. No provision is made for collection from the estate of the recipient's spouse.

Where, as here, the language of a statute is clear and unambiguous, the court must enforce it as written. It may not

annex new provisions or substitute different ones, or read into the statute exceptions, limitations, or conditions which the legislature did not express. *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 568 (2002), quoting *Bronson v. Washington National Insurance Co.*, 59 Ill. App. 2d 253, 261-62 (1965). Moreover, as the appellate court correctly observed, it is a basic principle of statutory construction that " 'the enumeration of exceptions in a statute is construed as an exclusion of all other exceptions.' " 358 Ill. App. 3d at 232, quoting *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 286 (2003). In cases such as this, where a statute specifies exceptions to a general rule, no exceptions other than those designated will be recognized. *In re Estate of Tilliski*, 390 Ill. 273, 283, 61 N.E.2d 24 (1945). The appellate court was therefore correct to conclude that the Medicaid Act cannot be construed as permitting the state to look to the estate of a spouse of a recipient of medical assistance for reimbursement of costs correctly paid on the recipient's behalf.

Section 5–13 of the Illinois Public Aid Code (305 ILCS 5/5–13 (West 2004)) does give the Department a claim against the estate of a person or "the estate of the person's spouse" for amounts expended for the person for the type of nursing home care received by Julius. The right to collection conferred by this statute, however, is expressly limited. Under the statute's terms, the Department may assert its claim for reimbursement only to the "extent permitted under the federal Social Security Act." 305 ILCS 5/5–13 (West 2004). Such a limitation is required by the primacy of federal law. Although a state possesses wide discretion in administering its Medicaid programs, that discretion is qualified by its mandate to adhere to federal statutes and corresponding federal regulations. See *Smith v. Miller*, 665 F.2d at 178. As we have just explained, federal law does not authorize a state to seek reimbursement of Medicaid payments from the estate of a recipient's spouse. If section 5–13 of the Public Aid Code were read to authorize collection from the estate of a recipient's spouse, it would therefore exceed what is permitted by the Social Security Act and could not serve as the predicate for the Department's claim against Beverly's estate. See *In re Estate of Budney*, 197

Wis. 2d 948, 950, 541 N.W.2d 245, 246 (App. 1995); *In re Estate of Craig*, 82 N.Y.2d 388, 394, 624 N.E.2d 1003, 1006, 604 N.Y.S.2d 908, 911 (1993). The same is true for 89 Ill. Adm. Code §102.200, the administrative regulation based on that statute invoked by the circuit court in support of its decision.

While the Medicaid Act does not authorize the Department to proceed against Beverly's estate, that does not end our inquiry. As we have just discussed, the Act bestows on Illinois the option of defining the estate of a Medicaid recipient such as Julius more expansively than under this state's normal probate law. 42 U.S.C. §1396p(b)(4)(B) (2000). Under the Act, assets conveyed to a spouse the way the house and automobile were conveyed to Beverly could have been defined by the Illinois General Assembly to remain part of the Medicaid recipient's estate for purposes of recovering Medicaid payments.

Reported decisions indicate that some other states have elected to take this approach. See *In re Laughead*, 696 N.W.2d 312 (Iowa 2005) (under Iowa Code section 249A.5(2)(c), the estate of a medical assistance recipient includes any real property, personal property or other asset in which the recipient had any interest at the time of the recipient's death, to the extent of such interests, including but not limited to interests in jointly held property); *Estate of DeMartino v. Division of Medical Assistance & Health Services*, 373 N.J. Super. 210, 861 A.2d 138 (2004) (N.J. Stat. Ann. §30:4D–7.2 (West 1997) defines deceased Medicaid recipient's estate to include "assets conveyed to a survivor, heir or assign of the recipient through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement"); *State of Nevada Department of Human Resources v. Ullmer*, 120 Nev. 108, ___, 87 P.3d 1045, 1050 (2004) (statutes broaden the definition of "estate" to include "assets conveyed to a survivor, heir or assign of the [deceased] [Medicaid] recipient through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement"); *In re Estate of* Jobe, 590 N.W.2d 162, 164 (Minn. App. 1999) (Minnesota statute expressly allows claims for recovery of medical assistance costs rendered for predeceased spouse up to value of assets that "were marital property or jointly owned property *** during

the marriage); *In re Estate of Knudson*, 132 Idaho 213, 216, 970 P.2d 6, 9 (1998) (Medicaid recipient's estate defined by Idaho statute to include community property of surviving spouse–Medicaid Act preempts recovery from surviving spouse's estate except to the extent of such community property).

For a brief period, the General Assembly took that approach as well. It exercised the option conferred on states by 42 U.S.C. §1396p(b)(4)(B) and, in 1995, amended section 5–13 of the Public Aid Code (305 ILCS 5/5–13 (West 2004)) to make the more expansive definition of estate applicable in all proceedings to recover amounts correctly paid on behalf of Medicaid recipients in Illinois. After only a year, however, the legislature changed its position. In 1996, it enacted new legislation which expressly limited the more expansive definition of estate to the only situation where the Medicaid Act requires it to be used, namely, where the deceased recipient "has received (or [was] entitled to receive) benefits under a long-term care insurance policy." See 305 ILCS Ann. 5/5–13, Historical & Statutory Notes, at 189 (Smith-Hurd 2001). That limitation was in effect when both Julius and Beverly died, and it remains in effect today.

The existence of this statutory limitation distinguishes our case from *In re Estate of Schwab*, 1998 N.D. 226, 586 N.W.2d 847, a decision cited by the Department in support of its position. The North Dakota statutes at issue in *Schwab* did not define a recipient's estate as Illinois has, and the matter was left to the court to delineate. It is therefore of no use in resolving this case. Our legislature has spoken clearly on the matter, and we are bound to follow the law as written.

Because no long-term care insurance policy was involved here, Julius' estate consists only of that property that would be regarded as part of his estate under the Probate Act of 1975 (755 ILCS 5/1–1 *et seq.* (West 2004)). 305 ILCS 5/5–13 (West 2004). Under Illinois probate law, property held in joint tenancy is never part of the estate of the joint owner who dies first. Upon the death of one joint tenant, title to the property automatically vests in the surviving joint tenant. See *In re Estate of Alpert*, 95 Ill. 2d 377, 381 (1983). Accordingly, the

house and automobile at issue in this case cannot be deemed part of Julius' estate for purposes of the Department's action for reimbursement of the Medicaid payments made on his behalf. The proceeds from the sale of that property are therefore not subject to the Department's claim under section 5–13 of the Public Aid Code (305 ILCS 5/5–13 (West 2004)).

For the foregoing reasons, the Department's claim for reimbursement should not have been permitted by the circuit court. The appellate court's judgment reversing the circuit court's order and remanding the cause to the circuit court for further proceedings is therefore affirmed.

*Affirmed.*

JUSTICE KILBRIDE took no part in the consideration or decision of this case.