IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 24, 2006 Session

## IN RE: THE ESTATE OF JAMES CLIFFORD SMITH

**Appeal from the Probate Court for Sumner County**
**No. 2004P-12     Tom E. Gray, Chancellor**

_____

**No. M2005-01410-COA-R3-CV - Filed November 1, 2006**

_____

Estate appeals probate court's determination that subject estate was liable to Bureau of Tennessee for Medicaid nursing home benefits correctly provided to a pre-deceased spouse. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court
Reversed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. WILLIAM C. KOCH, JR., P.J., M.S., filed a concurring opinion.

Timothy L. Takacs, David L. McGuffey, Hendersonville, Tennessee, for the appellant, James G. Smith, Executor.

Paul G. Summers, Attorney General, Sue A. Sheldon, Senior Counsel, for the appellee, State of Tennessee, Bureau of TennCare.

### OPINION

The issue presented to us is whether under 42 U.S.C. § 1396p(b) the Bureau of TennCare ("State") may recover from the estate of a husband for Medicaid benefits correctly paid on behalf of his predeceased wife who left no estate. The parties have stipulated to the relevant facts. The question presented to us is a purely legal question which is subject to *de novo* review. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

### I. FACTS

Mr. and Mrs. Smith had been married over 60 years when Mrs. Smith suffered a series of debilitating strokes in November of 2001. In December of 2001, Mrs. Smith was admitted to a nursing facility in Madison, Tennessee. The state is attempting to recover from the estate of her husband Medicaid nursing home benefits correctly paid on behalf of Mrs. Smith. The parties stipulated to the following facts:

The couple lived in their Hendersonville, Tennessee, home until May 1999. At that time James and Mary sold their home and moved to an independent-living apartment at Park Place Retirement Center in Hendersonville.

James, 90, began having seizures that were somewhat controlled with medication. He was legally blind and extremely hearing impaired. In November 2001 Mary, 90, suffered a series of strokes that resulted in left side paralysis . . . . She received home therapy until December 10, 2001, when she was admitted to a rehabilitation facility in Gallatin, Tennessee. On December 20, 2001 she was transferred to Imperial Manor Healthcare Facility in Madison, Tennessee.

In 2002, James moved to an assisted-living apartment at Park Place. Park Place assisted him in bathing, dressing, medication administration, laundry, and meals. The family provided transportation to the nursing home for Mary's visitation and James' doctor appointments.

James' assisted living costs were approximately $3000 a month. In 2002, James' monthly income was Social Security of $879 and a duPont pension of $43.10. Mary's monthly income was $406 from Social Security. At the time of Mary's institutionalization, the Smith's total assets were $217,117, in various financial instruments that were titled in the name of James Smith, Mary Smith, or James and Mary Smith (that is, as tenants by the entirety). The $217,117 included the proceeds from the sale of their Hendersonville home. However, all of these assets are marital assets.

A Medicaid resource assessment was done on April 16, 2002. That three-page document, which is a part of the record of the hearing on this claim, lists the assets that the couple owned on the date of Mary's institutionalization and how the assets were titled. Ruby Bankhead, an eligibility caseworker for the Davidson County Department of Human Services, approved Mary for Medicaid nursing home benefits starting July 1, 2002. Mary had less than $2000 in her checking account, which met Medicaid regulations. James paid $376.00 in patient liability to Imperial Manor each month for Mary's care. All assets that were jointly held were transferred to James within one year after the Medicaid approval, thereby meeting Medicaid regulations.

The Medicaid benefit approval is not disputed and all parties agree that Mrs. Smith appropriately received Medicaid nursing home benefits from her eligibility date of July 1, 2002 until her death in September of 2003.

At the time Mrs. Smith was approved for Medicaid benefits, she had less than $2,000 in her account. As stipulated above, the assets that were jointly held by Mr. and Mrs. Smith were transferred to Mr. Smith after Mrs. Smith was deemed eligible in a timely fashion that met the Medicaid guidelines. The stipulation does not explain how this was accomplished other than the

transfer met Medicaid guidelines.  Therefore, the parties agree that this transfer to Mr. Smith was lawful and had no effect whatsoever on Mrs. Smith's continued eligibility.[1]  Therefore, Mrs. Smith had no assets at the time of death.[2]  Mr. Smith did not receive Medicaid benefits.

Three months after the death of his wife, Mr. Smith died in December of 2003.  The state filed a claim in Mr. Smith's estate seeking to recover for Medicaid benefits correctly paid for his deceased wife's benefit totaling $34,262.54.  The probate court allowed the state to recover from Mr. Smith's estate Medicaid nursing home benefits provided to his wife.  The question presented is whether under the foregoing facts the state can be reimbursed for properly awarded Medicaid nursing home benefits awarded to Mrs. Smith from the estate of her surviving spouse, Mr. Smith.

## II. ANALYSIS

The answer to this question lies in the federal statute that governs recovery of Medicaid benefits.  By its plain language, 42 U.S.C. § 1396p(b) prohibits recovery of correctly paid Medicare benefits with three narrowly drawn exceptions.  Unless an exception applies, the state may not recover correctly paid benefits.  According to representatives of Mr. Smith's estate, none of the three exceptions apply.[3]

It is important to note that even under the three exceptions, recovery is allowed only against the estate of the person who actually received the benefits (the recipient).  The applicable federal statute, 42 U.S.C. § 1396p(b), entitled "Liens, adjustments and recoveries, and transfer of assets," provides in relevant part:

> (b)      Adjustment or recovery of medical assistance correctly paid under a State plan:

---

[1] It is critical to note that this transfer of assets is not challenged by the state as fraudulent or improper in any respect.  As a matter of fact, counsel informed the panel that this transfer to the husband was contemplated, if not required, by Medicaid.  *See* 42 U.S.C. § 1396r-5(f).

> An institutionalized spouse may . . . transfer an amount equal to the community spouse resource allowance. . . .  This transfer . . . shall be made as soon as practicable after the date of the initial determination of eligibility. . . .

42 U.S.C. § 1396r-5(f)(1)  The allowance referred to was designed specifically to set aside assets for the benefit of the non-institutionalized spouse so as to avoid his or her impoverishment.

[2] Counsel for the state at oral argument conceded that there were no facts in the record to show Mrs. Smith owned any property at the time of her death, cash or otherwise.

[3] The parties stipulated that after Mrs. Smith's death, the state could not seek reimbursement from Mr. Smith or from Mrs. Smith's estate for Medicaid nursing home benefits paid on Mrs. Smith's behalf under state or federal law.  This is true since 42 U.S.C. § 1396p(b) does not allow recovery from a surviving spouse or the estate of a recipient with a surviving spouse.

(1)     *No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except* that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in the case of the following individuals:

   (A)     In the case of an individual described in subsection (a)(1)(B) of this section, the State shall seek adjustment or recovery from the individual's estate or upon sale of the property subject to a lien imposed on account of medical assistance paid on behalf of the individual.

   (B)     In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the *individual's estate . . .*

   (C)     In the case of an individual who has received (or is entitled to receive) benefits under a long-term care insurance policy in connection with which assets or resources are disregarded in the manner described in clause (ii), except as provided in such clause, the State shall seek adjustment or recovery from the individual's estate on account of medical assistance paid on behalf of the individual for nursing facility and other long-term care services.

(2)     Any adjustment or recovery under paragraph (1) may be made only after the death of the individual's surviving spouse, if any, and only at a time --

   (A)     when he has no surviving child who is under age 21, or . . . is blind or permanently and totally disabled . . .

. . .

(4)     For purposes of this subsection, the term "estate," with respect to a deceased individual –

   (A)     shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and

   (B)     *may* include, at the *option* of the State . . . any other real and personal property and other assets in which the individual had any legal title or interest *at the time of death* (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or *other arrangement*.

42 U.S.C. § 1396p(b) (emphasis added).

Two of the exceptions are clearly not applicable as they pertain to liens and long-term care insurance policies. 42 U.S.C. § 1396p(b)(1)(A) and (C). The state relies on the third exception in subsection (b)(1)(B) that allows recovery from the recipient's estate only if the recipient has no surviving spouse.[4] The state argues that the definition of "estate" in 42 U.S.C. § 1396p(b)(4) is broad enough to include the assets held in the estate of the surviving spouse that had once been held jointly with the recipient spouse. Therefore, the state maintains that 42 U.S.C. § 1396p(b)(1)(B) allows recovery from the estate of the surviving spouse when one expansively defines "estate" under 42 U.S.C. § 1396p(b)(4).

We conclude that the state cannot recover under 42 U.S.C. § 1396p(b)(1)(B) since the recipient, Mrs. Smith, never left an "estate" as that term is defined in subsection (b)(4). Subsection (b)(4) provides that a recipient's "estate" may be defined in two ways. First, "estate" is defined in accordance with applicable state probate law. 42 U.S.C. § 1396p(b)(4)(A). The state does not try to argue that Mrs. Smith left an estate under Tennessee probate law. Therefore, the state relies on the second way to define "estate." Under the second definition, a state is given the option to also include assets in the recipient's estate that may not be included in an estate under applicable probate state law. 42 U.S.C. § 1396p(b)(4)(B).

---

[4]The recipient's estate is also protected if the recipient has a surviving minor child or if a surviving adult child is disabled. 42 U.S.C. § 1396p(b)(2)(A).

These "optional assets" are assets that the recipient had an interest in *at the time of death* but may not become part of the recipient's estate under state law because they passed directly to the heir or survivor at death without technically passing through the estate. Depending on applicable state law, these assets may pass to the deceased's heirs or survivors through joint tenancy, survivorship, etc. The state argues that since Mrs. Smith once had an interest in the assets comprising Mr. Smith's estate, then the state can, in effect, "follow" these assets once held by Mrs. Smith to the estate left by her spouse.

The parties stipulated that the recipient spouse, Mrs. Smith, had conveyed all of her interest in their jointly held assets to Mr. Smith *before* she died. There are no allegations that these transfers were improper or fraudulent, or intended to defeat creditors. They were made in accordance with Medicaid nursing home benefits eligibility requirements. It is clear that under the express terms of the definition of "estate" relied upon by the state, in order to be a part of Mrs. Smith's "estate" under subsection (b)(4)(B), she had to have a legal title or interest in the property "at the time of her death." Because Mrs. Smith had no interest in any property[5] when she died, there is no estate of the benefit recipient.[6] Recovery is not allowed under 42 U.S.C. § 1396p(b)(1)(B).

Courts are divided on whether states can follow a recipient's estate through to the surviving spouse's estate. Some courts have interpreted 42 U.S.C. § 1396p(b) to prohibit the "tracing" or following of a recipient's estate to a surviving spouse's estate. *Hines v. Dept. of Public Aid*, 850 N.E.2d 148, 153 (Ill. 2006); *In re Estate of Budney*, 541 N.W.2d 245, 246 (Wis. Ct. App. 1995). Many courts, however, have held that 42 U.S.C. § 1396p(b) allows the state to recover from the recipient's estate after that estate was inherited by a surviving spouse who has since died. In other words, courts have allowed the state to "trace" a recipient's estate through to the estate of a surviving spouse. Where recovery has been allowed, we note it appears that the recipient spouse had an interest in the property comprising the estate of the surviving spouse at the time of the recipient's death. *In re Estate of Thompson*, 586 N.W.2d 847, 850 (N.D. 1998) (definition of estate broad enough to include assets of deceased recipient that were owned by recipient at time of death and conveyed to surviving spouse through joint tenancy etc.); *In re Estate of Jobe*, 590 N.W.2d 162, 164, 165-67 (Minn. Ct. App. 1999) (couple owned 120 acre homestead by joint tenancy). Because we have decided that the benefit recipient, Mrs. Smith, had no estate as that term is defined under 42 U.S.C. § 1396p(b)(4), we need not resolve the question of whether the state can recover from a recipient's estate through the estate of a surviving spouse.

---

[5]While any funds in Mrs. Smith's checking account at the time of her death would have constituted part of her "estate," counsel conceded that there is no proof in the record that Mrs. Smith owned any property at the time of her death, including a lack of proof as to the existence of or balance in any checking account.

[6]At oral argument, counsel for the state attempted to argue that Mrs. Smith held some undefined "equitable" interest in property she had previously conveyed. We do not find this argument relevant since 42 U.S.C. § 1396(b)(4) requires some "legal title or interest," and does not include equitable interest.

There is one state, however, where recovery may be allowed against a surviving spouse's estate if the surviving spouse's estate is composed of property that was at *any* time held jointly with a recipient spouse, regardless of whether the recipient spouse had an interest in the property at the time of the recipient's death. The North Dakota Supreme Court reached this conclusion in *In re Wirtz*, 607 N.W.2d 882 (N.D. 2000). The court concluded that the language in 1396p(b)(4)(B) which defined a recipient's estate to include assets conveyed to a spouse by "other arrangement" included a recipient's "interest" in assets conveyed by a recipient prior to death. *Id.* at 885. The court found that the terms "interest" and "other arrangement" are ambiguous, so the court turned to "extrinsic aids to ascertain the legislative intent." *Id.* Because Congressional committee reports revealed an intent to give states a wide latitude in recovering Medicaid benefits, the court held that "any assets conveyed by [recipient husband] to [surviving wife] before [recipient husband's] death and traceable to her estate are subject to the department's recovery claim." *Id.* at 886. *Accord*, *In re Estate of Bergman*, 688 N.W.2d 187, 190-92 (N.D. 2004); *Redfield v. Bitterman*, 620 N.W.2d 570, 574 (N.D. 2000). The court in *Wirtz* found that recoverable assets did not include all property held by either spouse during the marriage but was limited to "assets in which the deceased recipient *once* held an interest." 607 N.W.2d at 885.

We must respectfully disagree with the rationale of *Wirtz* since under 42 U.S.C. § 1396p(b)(4)(B), in order to be potentially recoverable, an asset must be one in which the recipient had a "legal title or interest at the time of death."[7]

In our case, the parties agreed Mrs. Smith lawfully conveyed the assets that are at issue to Mr. Smith before her death. The state does not argue that Mrs. Smith had any interest whatsoever in those assets when she died. Therefore, under 42 U.S.C. § 1396p(b), there existed no recipient estate subject to recovery.[8]

The trial court is reversed. Costs are assessed against the State of Tennessee, Bureau of TennCare for which execution may issue if necessary.

_____

PATRICIA J. COTTRELL, JUDGE

---

[7] In *Wirtz*, the state argued that 42 U.S.C. § 1396p(b) allows recovery of "equitable interests, a marital estate interest in the surviving spouse's entire estate, a homestead interest, and a legal interest in the surviving spouse's obligation to pay for the Medicaid recipient's medical care as necessary." *Id* at 883. The court, however, expressly disagreed with this particular position of the state. *Id*. The court in *Wirtz* did not identify any interest the recipient had in the assets found recoverable at the time of the recipient's death.

[8] The estate also argued that recovery is prohibited by Tenn. Code Ann. § 71-5-116(c). Since we find 42 U.S.C. § 1396p(b) bars recovery, it is not necessary to determine whether Tenn. Code Ann. § 71-5-116(c) also bars recovery.