NOTICE
Decision filed 03/11/15. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2015 IL App (5th) 130599

NO. 5-13-0599

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF WALTER L. CARLEN, Deceased | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| (First State Bank of Beecher City, | ) ) | |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 94-P-61 |
| David V. Carlen, | ) ) | Honorable James J. Eder, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court, with opinion.
Justice Chapman concurred in the judgment and opinion.
Justice Welch dissented, with opinion.

**OPINION**

¶ 1    This is an appeal from orders of the circuit court of Effingham County which reopened the estate of Walter L. Carlen, deceased, for the purpose of reviving a judgment which had been previously obtained against the estate, but which was about to lapse due to the passage of time.

¶ 2    On June 7, 1994, the decedent, Walter L. Carlen, died. His will was admitted to probate on July 5, 1994, in the circuit court of Effingham County, and David V. Carlen

1

and Lisa M. Carlen were appointed as independent coexecutors of the estate. For reasons not relevant to this decision, Lisa M. Carlen withdrew as a coexecutor, leaving David V. Carlen (Executor) as the sole executor of the estate. The verified petition for independent administration set the approximate value of the estate at $40,000.

¶ 3　At the time of the decedent's death, the First State Bank of Beecher City (Bank) was in possession of several promissory notes executed by the decedent. The Bank also had a security interest in the decedent's farm machinery and equipment, made in conjunction with a loan to Carlen Fertilizer, Inc., the business operated by the decedent prior to his death. On January 3, 1995, the Bank filed a claim against the estate, seeking to hold the estate accountable for all of the decedent's debts. In January of 1998, the court found in favor of the Bank's claim and entered judgment against the estate in the amount of $139,470.13, plus costs.

¶ 4　Once the Bank determined that the assets of the Carlen estate were inadequate to satisfy its judgment, the Bank began an aggressive campaign against the Carlen estate hoping to find additional assets or attach property that had been transferred predeath into the Walter L. Carlen Revocable Trust, dated November 1991. The Bank believed that the trust property should also be used to satisfy the Bank's judgment. The Executor objected to the use of the trust *res* to satisfy the majority of the Bank's debt and claimed that the property in trust was not a part of the Carlen estate. The parties engaged in contentious

2

litigation which lasted for more than six years.[1]  Ultimately, the court found that certain parcels contained within the Walter L. Carlen trust were available to satisfy the indebtedness to the Bank.  On March 15, 2000, the court entered an order for a judicial lien in favor of the Bank, consisting of the previous "judgment entered in the amount of $139,470.13 *** plus interest on the Judgment [in] the sum of $25,551.69 *** from January 9, 1998, to February 23, 2000, at the rate of 9% per annum."  The court further ordered "[t]hat any and all property subject to the Walter L. Carlen Revocable Trust, above and beyond the sum of $165,021.82, [was] not subject to this lien."

¶ 5    On August 14, 2006, toward the end of the legal mêlée between the parties, and some eight years after the Bank's judgment was entered against the estate, the Bank filed its first "Petition to Revive Judgment."  At the time this petition was filed, the Carlen estate was still open.  As a result of an objection by the Executor, the Bank filed an "Amended Petition to Revive Judgment" on September 20, 2006.  In its amended petition, the only request made by the Bank was for the accrued interest from the date of judgment to August 14, 2006.  On January 18, 2007, the court entered an order approving the Bank's amended petition for revival of the judgment, giving the estate credit for monies paid by the estate on the Bank's debt and granting statutory postjudgment interest from June 27, 1998, to December 14, 2006.  The court found that the Bank was entitled

---

[1]The parties did have another proceeding pending in the circuit court of Effingham County, State of Illinois, cause No. 00-CH-6, which is not before us.

to judgment as of December 14, 2006, in the "total sum of $227,944.52, consisting of $129,373.52 in principal and $98,571.00 in post-judgment interest."

¶ 6    On March 27, 2007, almost 13 years after decedent's death, the court approved the inventory and final accounting submitted by the Executor.  In its order, the court found that the Bank appeared to have been the only creditor of the estate and that there were no assets available for distribution to the heirs.  The court further stated "that the Executor [had] completed all duties necessary in his capacity as Executor *** and there [was] no just reason to delay closing the Estate."  The Executor was then discharged from his duties, and the estate was closed on March 27, 2007.

¶ 7    On June 28, 2013, almost 19 years after the estate was originally opened and some 6 years after the closure of the Carlen estate, the Bank filed a "Petition to Reopen Estate" pursuant to section 24-9 of the Probate Act of 1975 (755 ILCS 5/24-9 (West 2006)).  The Bank alleged that its judgment remained unpaid and that its unsatisfied judgment was "an unsettled portion of the estate" within the meaning of the statute.

¶ 8    On July 2, 2013, the court, finding that notice was unnecessary, entered an *ex parte* order granting the Bank's petition, vacated its March 27, 2007, order closing the estate, and further vacated that portion of the order discharging the Executor. Additionally, the court required that a new bond be furnished by the Executor, "as provided by law."

¶ 9    The former Executor filed a motion to vacate the court's July 2 order.  On August 30, 2013, while the Executor's motion to vacate was pending, the Bank filed a new "Petition to Revive Judgment."  In its petition, the Bank went through a summary of the

previously granted judgments, as amended with interest, and then requested that the court add additional interest that had accrued from December 14, 2006, to August 30, 2013. The Bank did not allege the discovery of any new assets, but merely requested an increase in the monthly interest due based upon the statute that allows for accruing interest at the rate of 9% on judgments that remain unsatisfied. 735 ILCS 5/2-1303 (West 2012).

¶ 10    On October 23, 2013, after hearing arguments from the Executor and the Bank, the court left intact its July 2 order reopening the estate and set a hearing on the Bank's petition for revival of its judgment. After the Bank's "Petition to Revive Judgment" was heard, the court granted the petition and added the statutory interest which the Bank had requested. The Executor now appeals the order allowing the estate to be reopened, as well as the order granting the Bank a revival of its judgment. For the following reasons set forth hereafter, we reverse the rulings of the trial court.

¶ 11                               ANALYSIS

¶ 12    Before addressing the merits of the appeal, we must first determine whether we have jurisdiction to review the orders of the trial court. The Bank contends that the Executor filed his notice of appeal more than 30 days after the trial court denied his motion to vacate the order allowing for the reopening of the estate. The court ruled on the Executor's motion on October 23, 2013, and the Executor filed his notice of appeal on December 23, 2013. The Bank argues that the October order entered by the court denying the Executor's motion to vacate the order reopening the estate was final and

5

appealable. Therefore, because the Executor did not appeal that order within 30 days, he waived his right to have the matters adjudicated therein considered by this court.

¶ 13   On July 2, 2013, the court, without notice, granted the Bank's petition to reopen the estate. In doing so, the court, *ex parte*, reversed its prior findings made in March of 2007. The court, in spite of having previously found that the Executor had "completed all duties necessary in his capacity as Executor *** and [that] there [was] no reason to delay closing the Estate," chose to vacate that order based simply on the verified petition of the Bank to reopen the estate. This *ex parte* order could not have been final, as it resurrected an estate that had been closed some six years. Indeed, the Bank's petition to reopen the estate began, once again, a flurry of motion activity requiring resolution by the court. Therefore, neither the July 2013 order nor the October 2013 order denying the Executor's motion were final orders as contemplated by Illinois Supreme Court Rule 303 (eff. May 30, 2008) (notice of appeal must be filed within 30 days after the entry of the final judgment appealed from).

¶ 14   The Bank argues, nonetheless, that the Executor still missed the deadline for appeal pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Feb. 26, 2010). Rule 304(b)(1) allows for an appeal from a final judgment "entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Feb. 26, 2010). The Bank argues that the court's order effectively appointed an executor of the estate, and, therefore, Rule 304(b)(1) must apply in this instance. We agree that Rule 304 allows appeals from certain kinds of judgments or orders, even where, as here, the order appealed from does not dispose of all

6

the issues in the proceeding. The committee comment to Rule 304(b)(1) offers an illustrative, but nonexhaustive, list of final orders that are appealable under the rule. That list includes "an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." Ill. S. Ct. R. 304(b)(1), Committee Comments (rev. Sept. 1988). "A central reason behind making the time for appeal of such orders mandatory, and not optional, is that certainty as to some issues is a necessity during the lengthy procedure of estate administration." *In re Estate of Kime*, 95 Ill. App. 3d 262, 268, 419 N.E.2d 1246, 1250 (1981). If, for example, a party could not appeal an order determining the executor of an estate, then the party would have to wait until the end of the estate proceedings to file an appeal. Under those circumstances, "were an appellant successful, then the entire administration might have to be begun again." *Estate of Kime*, 95 Ill. App. 3d at 268, 419 N.E.2d at 1250. Starting over would be a waste of judicial resources, especially where the issue could have been resolved early on in the proceedings.

¶ 15   There is no doubt in this case that the original 1994 orders admitting the will to probate and appointing the coexecutors and the 1998 order allowing the Bank's claim were final orders of the court as contemplated by Rule 304(b)(1). Had the parties initially challenged any of these orders, they would have to have been done within the time prescribed by Rule 304(b)(1). But the parties did not contest these orders and, after 30 days, they became final. Contrary to the Bank's assertions, the court's July 2 order did not appoint or remove an executor. The July 2 order merely vacated the court's prior order of March 27, 2007, the effect of which was to reinstate the executor who had been

7

acting in that capacity since January 27, 1998. Similarly, the court's denial of the Executor's motion to vacate did not finally determine the status of the parties, as the Bank had pending its "Petition to Revive Judgment." Therefore, neither the July 2 order nor the October 23 orders were "final," as contemplated by Rule 304(b)(1).

¶ 16   The trial court ruled on the Bank's petition for revival of its judgment on November 26, 2013. This was the only matter left pending in the estate after it was reopened, and once ruled upon, the court had disposed of all the issues remaining between the parties. "Appellate court jurisdiction is limited to reviewing a final judgment, which terminates the litigation and disposes of the parties' rights on either the entire controversy or some definite and separate part of it." *Baldassone v. Gorzelanczyk*, 282 Ill. App. 3d 330, 333, 667 N.E.2d 639, 641 (1996). The court's November order was a final determination of the status of the Bank's judgment, *vis-à-vis* the estate. The Executor's appeal was timely filed within 30 days thereafter. Therefore, we have jurisdiction to review those issues properly preserved for appeal, including the propriety of the order reopening the estate as well as the order to revive the judgment.

¶ 17   Turning to the merits, we first address the court's July 2 *ex parte* order vacating the March 2007 order discharging the Executor and closing the estate. The *ex parte* order was based upon a petition to reopen the estate filed by the Bank pursuant to section 24-9 of the Probate Act of 1975 (Act) (755 ILCS 5/24-9 (West 2006)). Section 24-9 provides that an estate may be reopened "to permit the administration of a newly discovered asset or of an unsettled portion of the estate on the petition of any interested person." 755 ILCS 5/24-9 (West 2006).

¶ 18    Here, the court entered its order to reopen the estate based upon allegations to revive the Bank's judgment which had originally been granted on January 27, 1998. The Bank had already once revived this judgment on December 14, 2006, while the estate was still open. This second petition to revive requested the same relief as the first petition– that the court grant the Bank an amount of statutory accrued interest. The second petition sought interest from December 14, 2006, to August 30, 2013, the date of the second petition's filing. The Bank did not allege that there were any "newly discovered assets" in the estate. Therefore, the only basis upon which the court could have reopened the estate was if the addition of the statutory interest was the equivalent of "permit[ting] the administration *** of an unsettled portion of the estate."

¶ 19    The question as to whether an unsatisfied judgment can be defined within the context of the statute that allows for the further administration of an unsettled portion of the estate under section 24-9 of the Act appears not to have been previously considered by our courts. Resolution of this issue, therefore, requires both the interpretation and application of the statute as it applies to the Bank's judgment. Given that there are no facts in dispute, we are faced only with a question of law, the interpretation of a statute, and therefore, our review is *de novo*. See *In re Estate of McInerny*, 289 Ill. App. 3d 589, 596, 682 N.E.2d 284, 288 (1997).

¶ 20    The Executor contends that the phrase "portion of the estate" refers to property, both real and personal. The Executor further argues that an unsatisfied judgment is a debt, not property. Because a debt is not property, the Executor concludes that a

9

judgment cannot be construed as an unsettled portion of an estate. The context in which the word "estate" is used in other sections of the Act supports the Executor's position.

¶ 21 We acknowledge that there is no definition of the word "estate" in the Act. However, the Act defines the term "bequeath" as the disposition of "real or personal property by will." 755 ILCS 5/1-2.04 (West 2006). In the rules of intestate descent and distribution, the Act refers to the "intestate real and personal estate of a resident decedent." 755 ILCS 5/2-1 (West 2006). Likewise, in the distribution section setting forth the rules for an independent representative, the Act refers to whether "there are sufficient assets to pay all claims." 755 ILCS 5/28-10(a) (West 2006). In estates where there are sufficient assets to pay all claims, "the independent representative may at any time *** distribute the estate to the persons entitled thereto," thus creating a distinction between the property in the estate and a claim owed by the estate. 755 ILCS 5/28-10(a) (West 2006). The Act also uses property as a guideline in setting a bond. The Act requires that the bond "shall be for an amount not less than double the value of the personal estate if individuals act as sureties." 755 ILCS 5/12-5(a) (West 2006). This is significant, as it would seem impossible to post a bond based upon a debt. And, in defining the obligations of the personal representative of the estate, the Act states: "(a) Within 60 days after the issuance of his letters the representative of the estate of a decedent or ward shall file in the court a verified inventory of the real and personal estate which has come to his knowledge and of any cause of action on which he has a right to sue." 755 ILCS 5/14-1(a) (West 2006).

10

¶ 22 In a different but significant context, our supreme court, in *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 850 N.E.2d 148 (2006), had the occasion to examine the definition of the word "estate" for purposes of determining whether the Illinois Department of Public Aid could collect reimbursement of Medicaid payments made on behalf of a recipient. In its analysis, the court looked at the federal law applicable to Illinois Medicaid recipients. The Medicaid Act provides, in relevant part, "In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate ***." 42 U.S.C. § 1396p(b)(1)(B) (2000). The court acknowledged and affirmed that the proper definition of the term "estate," as determined by Congress in 42 U.S.C. § 1396p(b), "*shall* include all real and personal property and other assets included within the individual's estate as defined by the particular state's probate law." (Emphasis in original.) *Hines*, 221 Ill. 2d at 229, 850 N.E.2d at 152. The court also looked at section 5-13 of the Illinois Public Aid Code (305 ILCS 5/5-13 (West 2004)), which allows for the State to receive reimbursement from a decedent's estate to the extent permitted by the federal Social Security Act (42 U.S.C. § 301 *et seq*. (2000)). This Illinois statute defined "[t]he term 'estate', as used in this Section, with respect to a deceased person, [to] mean[ ] all real and personal property and other assets included within the person's estate, as that term is used in the Probate Act of 1975." 305 ILCS 5/5-13 (West 2004); see also *Hines*, 221 Ill. 2d at 231, 850 N.E.2d at 153-54.

¶ 23 The overwhelming evidence of the definition of the word "estate" clearly refers to property, both real and personal. Claims for governmental reimbursement, just like

11

claims made for loaning money, must be paid from these assets. The Bank, however, argues that its judgment must be an unsettled matter in the estate because the law regarding revival of a judgment must "be filed in the original case in which the judgment was entered" (735 ILCS 5/2-1602(b) (West 2012)). Thus, even if the estate is confined to the assets of the decedent, the unsatisfied judgment remains unsettled if the Bank decides to revive its judgment as allowed by statute. To argue that a final judgment is an unsettled matter in an estate is the antithesis of an order that grants finality in a judicial action by the court. Long ago, our supreme court defined a judgment as follows: "A judgment is the sentence of the law pronounced by a court upon the matter contained in the record. It is the law's last word in a judicial controversy and may be defined as a final consideration and determination of a court upon a matter submitted to it in an action or proceeding. A judgment is the judicial act of the court." *People ex rel. Toman v. Crane*, 372 Ill. 228, 230, 23 N.E.2d 337, 339 (1939).

¶ 24    The Bank's money judgment was final 30 days after the court allowed the claim in January 1998. The Executor did not contest the judgment. The fact that a judgment can be revived is a creature of statutory construction to protect a creditor. See 735 ILCS 5/2-1602 (West 2012). The Bank did not have to obtain its judgment within the context of the estate proceedings. The Bank was in possession of promissory notes and could have filed separate actions on the notes. It chose not to do so. As a result, it created for itself a conundrum. The statute for reopening an estate does not allow the court to open the estate for the purpose of adding interest to a judgment that has been final since 1998. Instead, the prerequisites for reopening an estate are very limited, and the revival of a

12

judgment as a reason to reopen the estate is inconsistent with the need to administer an estate to gain closure for all of the parties involved.

¶ 25   In light of the foregoing, we find, as a matter of law, that an unsatisfied money judgment is not the equivalent of an "unsettled portion of the estate" as that term is used in section 24-9 of the Act.  The trial court made no findings in this regard, but did reopen the estate and allowed the Bank's petition for revival of the judgment, tacking on additional interest to be paid by an estate that had no value.  It was error for the court to reopen the estate under the circumstances presented here.  Accordingly, we reverse both the November 26, 2013, order granting the Bank revival of its judgment as well as the October 23, 2013, order reopening the estate.  We further instruct the trial court to reinstate its March 27, 2007, order closing the estate and discharging the Executor.

¶ 26   Reversed and remanded with instructions.

¶ 27   JUSTICE WELCH, dissenting.

¶ 28   I respectfully dissent from the opinion of my distinguished colleagues.

¶ 29   This is an appeal from orders of the circuit court of Effingham County which reopened the estate of Walter L. Carlen, deceased, for the purpose of reviving a judgment which had been previously obtained against the estate but which was about to lapse due to the passage of time.  Because I find there is no appellate jurisdiction, I would dismiss the appeal.

13

¶ 30   The Executor, in his opening brief, posits our jurisdiction on Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Illinois Supreme Court Rule 303 (eff. May 30, 2008), concerning appeals from final judgments of the circuit court.  The Bank responds that the Executor is appealing not from the court's order reviving the judgment, but from the court's order reopening the estate, and the Executor did not file his notice of appeal within 30 days of the denial of his motion to vacate the order reopening the estate.  Accordingly, the Bank argues, jurisdiction does not lie under Supreme Court Rules 301 and 303.  I agree.

¶ 31   Supreme Court Rule 301 allows appeals from final judgments of the circuit court; Supreme Court Rule 303 requires that the notice of appeal from the final judgment be filed within 30 days of its entry, or within 30 days of the denial of a timely motion directed against the judgment.  The timely filing of the notice of appeal is jurisdictional.  *Eckel v. MacNeal*, 256 Ill. App. 3d 292, 295 (1993).  The Executor appeals not from the order reviving the judgment; he raises no error with respect to that order.  The Executor raises error and is appealing only with respect to the judgment reopening the estate.  The Executor's notice of appeal was not filed within 30 days of the entry of that order or the entry of the order denying his motion to vacate that order.  Accordingly, jurisdiction does not lie under Supreme Court Rule 301.

¶ 32   I further believe that jurisdiction does not lie under Illinois Supreme Court Rule 304(b)(1) (eff. Feb. 26, 2010), which allows appeal of an interlocutory order "entered in the administration of an estate *** which finally determines a right or status of a party."  The order reopening the estate, reappointing the executor, and requiring the posting of

14

bond was an order which finally determined the right or status of a party. The Committee Comments to Rule 304(b)(1) state that "appointing or removing an executor" is an order within the scope of the rule. Ill. S. Ct. R. 304(b)(1), Committee Comments (rev. Sept. 1988).

¶ 33    Appeals taken pursuant to Supreme Court Rule 304(b)(1) must be taken within 30 days of entry of the order appealed from, in this case, the order reopening the estate. *In re Estate of Thorp*, 282 Ill. App. 3d 612, 616 (1996). The policy behind this mandatory appeal is to avoid piecemeal appeals and grant certainty to issues at the outset of often lengthy estate administration. 282 Ill. App. 3d at 616. Otherwise, a delayed appeal of an estate order entered at the beginning of estate administration would create inefficiencies and impracticalities, such as voiding all subsequent orders and making beneficiaries return distributions back to the estate and start the administration all over again. 282 Ill. App. 3d at 616-17. In the instant case, if the estate was improperly opened, any orders entered thereafter would be improperly entered, and a delayed appeal would create inefficiencies and impracticalities. As I have already pointed out, the Executor's notice of appeal was not filed within 30 days of entry of the order denying his motion to vacate the order reopening the estate. Accordingly, it is not sufficient to vest this court with jurisdiction over the appeal pursuant to Supreme Court Rule 304(b)(1).

¶ 34    The Executor responds that the order reopening the estate is void and can be attacked at any time. A void judgment may be attacked at any time, in any court, either directly or collaterally. *MacNeal*, 256 Ill. App. 3d at 296. The Executor asserts that the order reopening the estate is void because it was not predicated on the need for

15

administration "of a newly discovered asset or of an unsettled portion of the estate." Relying on *In re Estate of Kuntz*, 98 Ill. App. 2d 367, 370 (1968), the Executor asserts that these requirements of section 24-9 of the Probate Act are jurisdictional.

¶ 35    In *Kuntz*, the court affirmed an order denying a petition to reopen an estate for the purpose of receiving proof of the correct heirs of the decedent because the petition had contained no allegation of the need to administer a newly discovered asset or an unsettled portion of the estate.  The court stated:

> "Since it is not alleged that there are undiscovered assets or an unsettled portion of the estate, the trial court lacked jurisdiction to reopen the estate pursuant to the prayer of the petition.  'Where statutes specify the grounds on which a final settlement will be opened, modified, or set aside, such grounds must be shown to be present to warrant such action by the court.' [Citation.]"  98 Ill. App. 2d at 370.

¶ 36    The language in *Kuntz* was clarified in *In re Estate of Bilotti*, 56 Ill. App. 3d 552, 555 (1978):

> "As noted, the reviewing court in the case of *Kuntz* determined that failure to allege a newly discovered asset or an unsettled portion of an estate resulted in a lack of jurisdiction on the part of the trial court to reopen an estate.  We are of the opinion that the requirement of alleging either of the requisites contained in section 24-9 of the Probate Act of 1975 instead of constituting a jurisdictional question set forth a condition precedent which must be met before an estate may be reopened.  Failure to allege one or the other of the conditions precedent results in the court being barred or prohibited from reopening an estate."

16

¶ 37    The failure to find the requisite conditions precedent renders the circuit court's order *voidable* but not *void*.  A void judgment is one in which the rendering court lacked subject matter jurisdiction, lacked personal jurisdiction, or acted in a manner inconsistent with due process.  *MacNeal*, 256 Ill. App. 3d at 296.  The circuit court in the case at bar did not lack subject matter jurisdiction or personal jurisdiction over the parties and did not act in a manner inconsistent with due process.  Accordingly the order reopening the estate was not void.

¶ 38    Because the appellant failed to file his notice of appeal in a timely manner, this court lacks jurisdiction to hear this appeal.  Accordingly, I would dismiss this appeal.

2015 IL App (5th) 130599

NO. 5-13-0599

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF WALTER L. CARLEN, Deceased | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| (First State Bank of Beecher City, | ) ) | |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 94-P-61 |
| David V. Carlen, | ) ) | Honorable James J. Eder, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

**Opinion Filed:**        March 11, 2015

_____

**Justices:**        Honorable Judy L. Cates, P.J.

Honorable Melissa A. Chapman, J.,
Concurred
Honorable Thomas M. Welch, J.,
Dissented

_____

**Attorney
for
Appellant**

Michael J. Meyer, 212 East Jefferson Avenue, P.O. Box 129,
Effingham, IL 62401

_____

**Attorneys
for
Appellee**

William W. Austin, Christopher P. Clasby, Siemer, Austin & Fuhr,
307 North Third Street, Effingham, IL 62401-0607

_____