In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1269

ALEJANDRO YEATTS,

*Plaintiff-Appellant,*

*v.*

ZIMMER BIOMET HOLDINGS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 16-cv-00706 — **Michael G. Gotsch, Sr.**, *Magistrate Judge.*

ARGUED SEPTEMBER 12, 2019 — DECIDED OCTOBER 8, 2019

Before FLAUM, EASTERBROOK, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* Alejandro Yeatts became ensnared in a federal investigation of his employer, Zimmer Biomet Holdings, Inc.[1] ("Biomet"), for violations of the Foreign Corrupt Practices Act because of his contacts with a distributor in

---

[1] In 2015, Zimmer Holdings, Inc. acquired LVB Acquisitions, Inc., which owned Biomet, Inc. and its subsidiaries, resulting in the combined entity Zimmer Biomet Holdings, Inc.

Latin America who had bribed doctors. To resolve the criminal and civil charges against it, Biomet entered two deferred prosecution agreements with the Department of Justice in 2012 and 2017. Following the 2012 agreement, Biomet had to distribute a Restricted Parties List of individuals who posed a risk to Biomet's compliance with anti-corruption and anti-bribery laws. The list included Yeatts and a notation regarding his suspension in connection with the corruption investigation of Biomet's Latin American subsidiary. After Biomet terminated Yeatts, he sued his former employer for defamation based on his inclusion on the Restricted Parties List. The district court entered summary judgment for Biomet. Because Biomet's inclusion of Yeatts on the Restricted Parties List conveyed no defamatory imputation of objectively verifiable or testable fact, we affirm.

## I. Background

Though the briefs go into significant detail regarding the parties' history and the sequence of events, a general outline of their relationship is sufficient background for resolving this dispute. The parties' accounts vary on many details, but they agree on the basics: Defendant-appellee Biomet is a global corporation that manufactures and sells medical devices and is headquartered in Warsaw, Indiana. Biomet subsidiary Biomet Argentina, SA employed plaintiff-appellant Alejandro Yeatts from 2005 to 2015 and, more specifically, as the Business Manager for South America from 2008 through 2014. His responsibilities in that role included implementing Biomet's compliance policies.

In 2008, Biomet terminated its distribution agreement with its Brazilian distributor Prosintese, run by Sergio Galindo, after it learned that Galindo had bribed healthcare providers to

promote and market Biomet products. Such conduct is pro-
hibited by the Foreign Corrupt Practices Act ("FCPA"), 15
U.S.C. § 78dd-1, *et seq.* Yeatts acknowledges he was informed
after the fact that Galindo had paid bribes and that Yeatts had
attended FCPA training sessions explaining it was not ac-
ceptable for a distributor to bribe doctors.

Despite the termination of Biomet and Prosintese's distri-
bution arrangement, Prosintese continued to own the govern-
ment registrations for Biomet's products in Brazil. Biomet
could not obtain new registrations in a timely manner, so in
June 2009, Biomet entered a "Private Instrument for Cancella-
tion of Business Relationship" with Prosintese and Galindo.
The 2009 document prohibited Prosintese and Galindo from
"importing, storing, promoting, distributing, or in any way
marketing in Brazil the products made by Biomet." It did,
however, permit Biomet to cooperate with Prosintese and
Galindo as "necessary to implement the new Biomet distrib-
utors in Brazil," until Biomet could acquire new registrations.
Bio2, one of the distributors that replaced Prosintese in Brazil,
hired Galindo as a consultant. Yeatts continued to communi-
cate with Galindo, now in his new role with Bio2, about prod-
uct registrations but also about Galindo's advice on products,
the market, and prices. Yeatts claims his boss—the president
of Biomet's international subsidiary—told him to keep a good
relationship with Galindo because he owned Biomet's prod-
uct registrations and that Biomet's legal department told
Yeatts he could have additional contact with Galindo through
Bio2.

The Department of Justice ("DOJ") investigated Biomet
for FCPA compliance relating to the bribery payments, which
led Biomet to enter into a Deferred Prosecution Agreement in

2012 (the "2012 DPA"). The DOJ assessed over $17 million in penalties and required that Biomet "engage an independent corporate compliance monitor ('the Monitor')" for at least 18 months to "assess and monitor Biomet's compliance with the terms of the [2012 DPA] so as to specifically address and re-duce the risk of any recurrence of Biomet's misconduct." The DPA authorized the Monitor to investigate Biomet's compli-ance program and prepare a report of recommendations to improve the program. It further required that Biomet "adopt all recommendations" in the Monitor's report.

In October 2013, Biomet received an anonymous whistle-blower email claiming that Biomet continued to work with Galindo as a Brazilian distributor. Per the 2012 DPA, Biomet informed the DOJ and the Monitor of the allegations, and the DOJ launched a separate investigation into potential corrup-tion. Yeatts complains that neither Biomet nor the DOJ inter-viewed him as part of their investigations, yet they considered his interactions with Galindo and whether those interactions were beyond what the 2009 document permitted. Biomet con-cluded Yeatts continued to sell and market Biomet products with Galindo despite his knowledge that Galindo had bribed doctors and his knowledge that Galindo and Prosintese were forbidden from marketing Biomet products. Yeatts states that his boss and Biomet's legal department approved all of his in-teractions with Galindo and that Biomet used him as the "fall guy" in the DOJ investigation. Biomet suspended Yeatts in April 2014 and eventually terminated him in September 2015.

In October 2014, pursuant to the Monitor's recommenda-tion, Biomet issued a Restricted Parties List ("RPL"), which was considered a best practice. Biomet's leadership team, its outside counsel, and the Monitor worked together to create

the list, which included Yeatts. Notably, the Monitor would not have approved the RPL without including Yeatts's name due to his connection to the corruption investigation. Biomet's Chief Compliance Officer, Vice President, and General Counsel distributed the RPL via email to Biomet employees and business partners in Latin America, stating:

> Biomet Inc. and its worldwide subsidiaries ("Biomet" or the "Company") are committed to complying with the anti-corruption and anti-bribery laws in all countries in which Biomet operates. In furtherance of that commitment, Biomet has identified several entities that pose significant and unacceptable compliance risks. The Company has placed these entities on a Restricted Parties List. All Biomet employees, agents, third parties and any individual or entity performing services for or on behalf of Biomet, anywhere in the world may not do business with any entity on the Restricted Parties List.

The email attached the RPL, which listed Yeatts as included per the "Brazil Investigation" and as "[s]uspended in connection with corruption-related investigation involving Biomet Brazil."

The DOJ concluded its second investigation in 2017, finding Biomet had not complied with the 2012 DPA and resulting in more criminal charges against Biomet. To resolve the additional charges, Biomet entered a second DPA ("2017 DPA") and paid a criminal penalty of $17.4 million. The 2017 DPA references several problematic instances of Yeatts's conduct in connection to his interactions with Galindo.

In October 2016, Yeatts filed suit in the Northern District of Indiana alleging that Biomet defamed him by including his name on the RPL.[2] Specifically, Yeatts challenged as false and defamatory Biomet's statement that he "poses a risk to Biomet's efforts to comply with anti-bribery laws because of improper activity supposedly uncovered by the company's anti-corruption investigation in Brazil." Biomet moved for summary judgment, and Yeatts moved for partial summary judgment. The district court denied Yeatts's motion and granted Biomet's motion because Biomet's statement that Yeatts posed a compliance risk was an opinion that could not be proven false; as such, it presented no defamatory imputation. Additionally, the court concluded that because Yeatts could not establish that Biomet made the statement with malice, Biomet was protected by both the qualified privilege of common interest and the public interest privilege. Yeatts now appeals.

## II. Discussion

We review a district court's decision on cross-motions for summary judgment de novo, examining the record and all reasonable inferences in the light most favorable to the party against whom the motion was filed. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 343 (7th Cir. 2018). The party opposing the motion must make a sufficient showing on every element of his case on which he bears the burden of proof; if

---

[2] The district court granted, in part, Biomet's motion to dismiss Yeatts's original complaint, dismissing the claims of intentional infliction of emotional distress and negligent infliction of emotional distress. Those claims are not at issue on appeal.

he fails to do so, there is no issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Yeatts dives deep into the weeds of his relationship with Galindo and with his superiors at Biomet, claiming conflicting evidence about his alleged involvement in any misconduct necessitates a trial. "Not all disputed facts, however, are relevant and material." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may affirm on any alternative ground that is supported in the record and was adequately presented in the trial court. *S.E.C. v. Bauer*, 723 F.3d 758, 771 (7th Cir. 2013).

A statement is defamatory if it "tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009). To prove defamation, a plaintiff must demonstrate: "(1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley v. Tanoos*, 865 N.E.2d 593, 596–97 (Ind. 2007). Indiana law separates defamation into two categories, depending on what is required to show damages. Defamation *per quod* involves words that "are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010). Conversely, defamation *per se* imputes criminal conduct, loathsome disease, or professional or sexual misconduct without reference to extrinsic evidence. *Id.* To succeed on Yeatts's

claim of defamation *per se*, the statement must contain an "objectively verifiable fact regarding the plaintiff. If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement is not actionable." *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015) (internal citation omitted).

Yeatts alleges Biomet's statements—that he was suspended in connection with the corruption investigation and that he posed a "significant and unacceptable compliance risk[]"—falsely suggest he engaged in criminal conduct and misconduct. He believes these statements imply false facts that are objectively verifiable. Biomet counters that the statement about Yeatts posing a risk cannot be proven false or verified by a factfinder because it is merely Biomet's opinion.

The statement that Yeatts was suspended in connection with the corruption investigation is true. Yeatts does not contest the accuracy of the statement; rather, he disputes the implication of his suspension—*i.e.*, that he engaged in misconduct or criminal behavior. Truth, however, is a total defense to a defamation claim. *West v. J. Greg Allen Builder, Inc.*, 92 N.E.3d 634, 646 (Ind. Ct. App. 2017). The statement is accurate, and none of the facts Yeatts attempts to raise as disputed (*i.e.*, whether he actually engaged in misconduct) would disprove the fact of his suspension. As such, that statement is not actionable defamation.

Next, as to Biomet's expressed concern that Yeatts posed a compliance risk, the Supreme Court has addressed the difference between statements of opinion and statements of fact. In *Milkovich v. Lorain Journal Co.*, the Court compared the following examples: "in my opinion John Jones is a liar" and "Jones shows his abysmal ignorance." 497 U.S. 1, 18–20 (1990).

In the first example, despite the qualifier that it is "my opinion," the Court explained the statement is defamatory because the speaker "implies a knowledge of facts which lead to the conclusion that Jones told an untruth." *Id.* at 18. The latter example about Jones's ignorance, however, is not defamatory because there is no "provably false factual connotation." *Id.* at 20.

Likewise, in *Sullivan v. Conway*, we considered whether the statement "Sullivan is a very poor lawyer" defamed the plaintiff. 157 F.3d 1092, 1097–98 (7th Cir. 1998). We contrasted hypothetical assertions that a lawyer is dishonest, forged his credentials, or lost all his cases—all verifiable statements of fact. "But to say that he is a very poor lawyer is to express an opinion that is so difficult to verify or refute that it cannot feasibly be made a subject of inquiry by a jury." *Id.* at 1097. We thus concluded the statement was not defamatory.

The statement that Yeatts posed a "significant and unacceptable compliance risk[]" is like the "abysmal ignorance" or "very poor lawyer" statements. There is no provably false factual connotation. Though Yeatts claims a factfinder could determine the precise limits Biomet placed on his interactions with Galindo and whether he violated those limits, those factual resolutions would not be dispositive of whether Yeatts posed a compliance risk. Even if Yeatts proved to a jury that he did not violate the specific limits Biomet imposed on his interactions with Galindo, that does not mean Biomet was incorrect or unreasonable in considering Yeatts a compliance risk. As the district court noted, for a company twice investigated by the DOJ for FCPA violations, it is reasonable to "take a hypersensitive view" of potential compliance risks. Like in *Sullivan*, where we determined it would be unmanageable to

ask the court "whether 'in fact' Sullivan is a poor lawyer," it is equally unmanageable to ask a court "to determine whether 'in fact'" Yeatts posed a compliance risk. *Id.*; *see also Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1236 (N.D. Cal. 2014) (considering similar claim and concluding that "even definitive proof that [the plaintiff] did not commit any acts in violation of the FCPA would not [] alter the tenor of [the defendant]'s statements" that he was concerned about FCPA risks "or render them false. It is possible for companies to comply entirely with the law and yet conduct business in a way that poses an investment risk.").

Yeatts's focus on the alleged lack of evidence that he engaged in criminal conduct misses the point. Even if there were zero evidence he engaged in criminal conduct, that would not prove false Biomet's concern that Yeatts posed a compliance risk. The inability to prove the statement false demonstrates that it is a statement of opinion, beyond the reach of defamation law.[3]

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[3] Because the statements in question carried no defamatory imputation, we need not address the application of privileges.