In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1512

FINITE RESOURCES, LTD.,
SOUTHERN CROSS ENERGY, LLC,
and DURANGO GROUP, INC.,

*Plaintiffs-Appellants,*

*v.*

DTE METHANE RESOURCES, LLC and
KEYROCK ENERGY, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:19-CV-00802-SMY — **Staci M. Yandle**, *Judge.*

ARGUED NOVEMBER 8, 2021 — DECIDED AUGUST 11, 2022

Before SCUDDER, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* The question in this case is whether the doctrine of correlative rights prohibits defendants from using a vacuum pump to extract coal mine methane from their property. Plaintiffs Finite Resources, Ltd., Southern

Cross Energy, LLC, and Durango Group, Inc. (collectively, "Finite") take the position that it does, so they sued Defendants DTE Methane Resources LLC and Keyrock Energy LLC for using a vacuum pump to extract valuable gas from defendants' property, which abuts Finite's property. The district court concluded that under the rule of capture, Finite did not own the gas, which could not be owned until extracted. Because Finite's claims depended on ownership of the gas, the district court granted summary judgment for defendants. Finite appeals, arguing that the doctrine of correlative rights negates the rule of capture and prohibits the use of a vacuum pump. To the extent Illinois law is not clear on this issue, Finite asks us to certify the question to the Illinois Supreme Court. We decline to certify the question and affirm.

**I**

Finite is the majority owner of the Orient #1 Mine, an abandoned coal mine in Franklin County, Illinois. It owns 90.9% of the property, while the other 9.1% belongs to the Royal Talon Company. In 2004, DTE acquired a lease and interest in the Orient #1 Mine for the purpose of extracting coal mine methane from its section of the property. Coal mine methane is gas released from the coal and surrounding strata due to mining activities. Once treated as a safety hazard, coal mine methane is now considered a commercially valuable resource.

To extract coal mine methane from the property, DTE drilled two wells on its section of the Orient #1 Mine and, in 2007, obtained a vacuum permit from the Illinois Department of Natural Resources. The permit allowed DTE to use a vacuum pump to assist in extracting coal mine methane from the wells. DTE used a vacuum pump until 2012, and then assigned its operations to Keyrock.

For more than ten years, Finite was unaware that defendants obtained a vacuum permit to extract coal mine methane from the wells on the property. Finite discovered defendants' use in 2018, after a shut-in test revealed that coal mine methane had been drained extensively from the Orient # 1 Mine. At first, Finite petitioned the IDNR for compulsory unitization,[1] seeking to unitize the parties' properties and to require Keyrock to ratably share their coal mine methane production with Finite. But the IDNR denied Finite's request. So Finite sued defendants in state court alleging conversion, trespass, accounting, and common law unitization. Finite also sought to enjoin defendants from using a vacuum pump to extract coal mine methane from the mine.

Defendants removed the case to federal court, where the district court granted summary judgment in favor of defendants. At summary judgment, the district court determined that, under the rule of capture, Finite was not the owner of the coal mine methane, which could not be owned until extracted. The district court explained that this rule applied regardless of whether extraction occurred by means of a vacuum pump. Because Finite's claims hinged on ownership, the district court concluded that the rule of capture foreclosed Finite's trespass, conversion, and accounting claims, as well as injunctive and declaratory relief. The district court also granted summary judgment to defendants on Finite's common law

---

[1] Unitization is "[t]he collection of producing wells over a reservoir for joint operations such as enhanced-recovery techniques." Black's Law Dictionary (11th ed. 2019). It is typically carried out after primary production starts to fall off substantially to permit efficient secondary recovery operations. *Id.* And it is done to comply with well-spacing requirements set forth by state law or regulation. *Id.*

unitization claim because the IDNR previously denied Finite's petition for unitization. This appeal followed.

## II

We review de novo a district court's ruling on a motion for summary judgment. *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

This case concerns two core principles of oil and gas law—the rule of capture and correlative rights. The rule of capture, which governs the ownership of natural resources including gas, provides that "gas that migrates from one property to another is subject to recovery and possession by the holder of the gas estate on the property to which the gas migrates." *Cont'l Res. of Illinois, Inc. v. Illinois Methane, LLC*, 364 Ill. App. 3d 691, 694 (5th Dist. 2006); *see also Brown v. Spilman*, 155 U.S. 665, 670 (1895). Stated simply, the first to "capture" the gas becomes the owner of the gas. *See* 3 JOYCE PALOMAR, PATTON AND PALOMAR ON LAND TITLES § 730.3 (3d ed. 2003). The rule of capture permits an owner to extract gas from the owner's land, even if the oil and gas migrated from a neighboring tract, and even when extraction depletes a single pool or gas reservoirs lying beneath adjoining lands. *See Briggs v. Southwestern Energy Production Co.*, 224 A.3d 334, 337 (Pa. 2020).

Because the rule of capture allows an owner to extract gas from their property without restraint, it limits the "correlative" rights of neighboring owners. That's where the doctrine of correlative rights comes in. The doctrine of correlative rights protects adjoining landowners by permitting them to

"go and do likewise." Williams and Meyers, Oil and Gas Law, 4th ed., (1990) §204.4; *see also Stephens County v. Mid-Kansas Oil & Gas Co.*, 113 Tex. 160, 167 (1923) ("[i]f the owners of adjacent lands have the right to appropriate, without liability, the gas and oil underlying their neighbor's land, then their neighbor has the correlative right to appropriate, through like methods of drainage, the gas and oil underlying the tracts adjacent to his own"). This means that "a mineral interest owner [has] an opportunity to produce his 'fair share'" of minerals beneath the land. *Texas Producing, Inc. v. Fortson Oil Co.*, 798 S.W.2d 622, 624 (Tex. App. 1990). But, as relevant here, the doctrine of correlative rights also imposes a duty on owners not to waste natural resources intentionally or negligently as to injure their neighbor. *See* 58 C.J.S. Mines and Minerals § 181 ("[o]ne owner may not waste the product to the injury of a neighbor … and has no right to waste, spoil, damage, or maliciously deplete the common source of supply or do anything that deprives another of a reasonable opportunity to extract his or her fair share of the deposit").

On appeal, Finite does not dispute that the rule of capture governs coal mine methane. They insist that they "do not claim absolute ownership rights in [the] coal mine['s] gas." Rather, Finite argues that the defendants' use of a vacuum pump violates their correlative rights because it causes damage or waste. Therefore, Finite reasons, they should be able to proceed on their trespass claim. But we find no support for this contention.

To begin, the IDNR—the state agency tasked with regulating oil and gas—specifically issued a vacuum permit to defendants. Before issuing a permit, the IDNR considers an owners' correlative rights. 62 Ill. Admin. Code § 240.1050. If

the IDNR later determines that a permit violates an owners' correlative rights, or causes damage or waste to property, the IDNR may revoke a permit. *Id.* Defendants have maintained their vacuum permit for more than a decade, and the record indicates that they have never been sanctioned or had their permit revoked. Although Finite argued before the district court that defendants illegally used a vacuum pump without a permit, Finite made clear during oral argument that they do not allege that defendants' use of the vacuum pump violated law or regulation (which both parties agree would negate the rule of capture). Absent illegality, the IDNR's issuance of the permit alone suggests that defendants' use of the vacuum pump to extract coal mine methane from their property did not violate Finite's correlative rights or otherwise intentionally cause damage and waste.

Moreover, the limited authority to address this question suggests that the use of a vacuum pump to extract gas from the property is permitted and does not negate the rule of capture. *See, e.g.*, *Briggs*, 224 A.3d at 337 (citations omitted) ("rule of capture applies even where devices such as pumps are used to bring the mineral to the surface and thereby reduce the production of neighboring wells"); *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 13 (Tex. 2008) ("[an owner] may use hydraulic fracturing to stimulate production from his own wells and drain the gas to his own property"); Williams and Meyers, Oil and Gas Law, 4th ed., (1990) §204.4 (under the rule of capture, the owner of a tract of land, no matter how small, "may by means of a compression or vacuum pump increase the production from his well though the result may be to drain his neighbor's property"). Finite has not identified any binding, or even persuasive, authority that calls this proposition into question. To the contrary, no court

has held that correlative rights prevent the use of a vacuum pump, or that the use of the vacuum pump negates the rule of capture.

Instead, Finite argues that, to the extent it is unclear whether the doctrine of correlative rights in Illinois prohibits the use of a vacuum pump in coal mine voids, our court should certify the question to the Illinois Supreme Court. Federal courts may ascertain the content of state substantive law while sitting in diversity, but we sometimes certify a question of state law based on several factors. Those factors include whether the case concerns a matter of vital public concern, whether the issue in the case is likely to recur in other cases, whether the question to be certified is outcome determinative of the case, and whether the state supreme court has yet to have an opportunity to illuminate a clear path on the issue. *See Vill. of Bedford Park v. Expedia, Inc.*, 876 F.3d 296, 302 (7th Cir. 2017); *see also Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630 (7th Cir. 2002) (identifying additional factors). The most important factor, however, is whether we feel genuinely uncertain about an issue of state law. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001).

We acknowledge that the Illinois Supreme Court has not yet ruled on the issue of vacuum pumps and correlative rights, but after considering the above factors, we do not find that this is a proper case for certification. Given the limited authority on this topic and the IDNR's regulation of the oil and gas industry, including the issuance of vacuum permits, we doubt the issue in this case is likely to recur. Finite also has not shown how certification would be outcome determinative. *See Allstate*, 285 F.3d at 639 (explaining that fact specific issues, as well as issues upon which there is no serious doubt

or issues that are not dispositive of the case, are not candidates for certification). Finite raised claims such as trespass that depend on possession of coal mine methane. Finite conceded that they do not claim absolute ownership of the gas in this case, and the doctrine of correlative rights does not grant Finite the ownership rights that they need to sustain any of their claims. And although Finite argues that the doctrine of correlative rights purportedly prevents the use of a vacuum pump and therefore negates the rule of capture, the IDNR's actions and other sources suggest otherwise. We therefore have no serious doubt about the answer to the question. Finite's request to certify is denied.

### III

In sum, the rule of capture controls and the doctrine of correlative rights does not prevent the use of vacuum pumps or otherwise vitiate the application of the rule in this case. We decline to certify to the Illinois Supreme Court a question about whether the doctrine of correlative rights prevents the use of a vacuum pump. Accordingly, we AFFIRM the district court's judgment.