In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 25-1824

PATRICK M. HARTNETT and DANIEL J. HARTNETT,
as Successor Trustees of the Lorrayne B.
Hartnett Trust dated June 27, 1984,

*Plaintiffs-Appellants*,

*v.*

JACKSON NATIONAL LIFE INSURANCE
COMPANY,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 23 CV 1601 — **Manish S. Shah**, *Judge*.

———————————

ARGUED DECEMBER 11, 2025 — DECIDED MARCH 16, 2026

———————————

Before RIPPLE, SCUDDER, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Lorrayne Hartnett purchased a long-term care insurance policy covering treatment in a nursing care facility or assisted living facility. During the COVID-19 pandemic, at the age of 94, Hartnett broke her hip. Fearing serious illness if she contracted COVID, Hartnett received

post-surgical care at home. Jackson National Life Insurance Company refused to pay for those home care expenses, so Hartnett filed a breach of contract suit alleging coverage by her policy. The district court disagreed and entered judgment for Jackson National. Because we conclude that Hartnett's policy doesn't provide a home health care benefit, we affirm.

I

Lorrayne Hartnett purchased a long-term care insurance policy from Allied Life Insurance Company in 1998, which Jackson National Life Insurance Company subsequently assumed. Hartnett selected a Nursing Care Policy, which provided benefits for care in institutional settings such as a nursing care facility or assisted living facility. Relevant to this appeal, her policy included an alternative plan of care benefit, permitting coverage for care in different settings—such as home care—under certain circumstances. Those circumstances required Hartnett to be receiving benefits under the policy and for Hartnett, her health care provider, and Jackson National to agree upon any alternative plan of care. Hartnett's policy also contained a conformity-with-state-statutes provision, which amended the policy to comply with Illinois requirements in the event of any conflict. A different policy available to Hartnett, which she did not select, was the Comprehensive Long Term Care Policy. That policy provided benefits for home and community-based care in addition to nursing care.

In May 2021, during the COVID-19 pandemic, Hartnett—then 94 years old—fractured her hip and underwent surgery. Her primary care physician, Phillip Sheridan, prescribed home care because Hartnett's age and underlying health conditions placed her at significant risk if she were to enter a

nursing facility and contract COVID-19. Dr. Sheridan provided Jackson National with a letter to that effect, stating that Hartnett required assistive care at home.

After being discharged from the hospital, Hartnett submitted a claim to Jackson National for home health care costs. Jackson National denied her claim, asserting that her policy didn't provide benefits for home care services. It further concluded that such benefits weren't available to Hartnett as an alternative plan of care because she wasn't receiving benefits in a nursing care facility, as required to trigger the alternative plan of care provision.

Hartnett sued Jackson National in federal court asserting diversity jurisdiction, alleging breach of contract. The parties each moved for summary judgment, and the district court granted Jackson National's motion. The court concluded that Hartnett's policy did not provide home health care benefits and that it wasn't bad faith for Jackson National to deny coverage under the alternative plan of care provision.

## II

### A

We review de novo a district court's decision on cross motions for summary judgment. *Ross v. Fin. Asset Mgmt. Sys., Inc.*, 74 F.4th 429, 433 (7th Cir. 2023). "We construe all inferences in favor of the party against whom the motion under consideration is made." *Id.* (citation modified). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

We first address Hartnett's claim that Illinois law altered the terms of her policy to provide for home health care,

reviewing de novo the district court's interpretation of state law, *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 927 (7th Cir. 2024), and of the insurance policy, *Miller v. St. Paul Mercury Ins. Co.*, 683 F.3d 871, 874 (7th Cir. 2012). We reject this claim for the same reasons articulated by Judge Shah in his thorough and well-done order.

Hartnett bears the burden of proving that her policy covers home health care. *ABW Dev., LLC v. Cont'l Cas. Co.*, 203 N.E.3d 922, 928 (Ill. App. Ct. 2022). Her argument proceeds in two parts. First, she argues that her policy's alternative plan of care provision "provides benefits for home health care" within the meaning of an Illinois regulation, which states that:

> A long-term care insurance policy or certificate may not, *if it provides benefits for home health care or community care services*, limit or exclude benefits … [b]y requiring that the insured/claimant first or simultaneously receive nursing and/or therapeutic services in a home or community or institutional setting before home health care services are covered[.]

Ill. Admin. Code tit. 50, § 2012.70(a)(2) (emphasis added). Second, she argues that because her policy must conform with state law, it incorporates § 2012.70(a)(2). Therefore, Jackson National couldn't condition alternative plan of care coverage on Hartnett first receiving treatment in a nursing facility, as it did in its claim rejection letter.

Hartnett's argument hinges on interpretation of § 2012.70(a)(2), which no Illinois court has addressed. But because there's no ambiguity in the regulation, there's no need for guidance from an Illinois court. See *Telamon Corp. v.*

*Charter Oak Fire Ins. Co.*, 850 F.3d 866, 872 (7th Cir. 2017) ("We certify questions only when the answer is unclear."). We find that the district court properly rejected Hartnett's argument. Her policy does not "provide[] benefits for home health care," as required for § 2012.70(a)(2) to apply. Nothing in the policy's language entitles Hartnett to a home health care benefit. Rather, the policy says that Jackson National will pay for an alternative plan of care if certain conditions are met, including that the insured is already receiving benefits under the policy and that the alternative plan of care is mutually agreed-upon by the insurer, the insured, and the insured's health care provider. Contrast this with the Comprehensive Long Term Care Policy, which designates benefit amounts for nursing care as well as home and community-based care. Because Hartnett's Nursing Care Policy lacks such a guarantee, it cannot be said to "provide[] benefits for home health care."

Hartnett responds that her policy's alternative plan of care provision at least contemplates home health care. But the purpose of an alternative plan of care provision is to provide discretionary coverage for treatment options outside of a policy's normal scope. See Nat'l Ass'n of Ins. Comm'rs, A Shopper's Guide to Long-Term Care Insurance 36 (2019), https://perma.cc/593W-86G2 (explaining that "the insurer is agreeing only to consider such an alternative"). Interpreting Hartnett's policy as affirmatively providing benefits for home health care would be "inconsistent with the flexibility inherent in the concept of an alternate plan of care." *Mansur v. PFL Life Ins. Co.*, 589 F.3d 1315, 1320 (10th Cir. 2009). As the district court recognized, the alternative plan of care provision merely presents an avenue for the insured to request, and for Jackson National to consider, such care. The district court

therefore correctly found that § 2012.70(a)(2) doesn't apply and that there was no breach of contract.

B

Hartnett separately claims that Jackson National's refusal to cover her home health care expenses breached the implied covenant of good faith and fair dealing. We review questions of contract interpretation de novo, applying Illinois law. *Soarus LLC. v. Bolson Materials Int'l Corp.*, 905 F.3d 1009, 1011 (7th Cir. 2018).

Contracts contain an implied covenant of good faith and fair dealing, but parties "are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract." *N. Tr. Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995). Here, Hartnett's policy says that Jackson National will pay the alternative plan of care benefit if (among other conditions) the insured is already "receiving benefits under this policy pursuant to a plan of care prescribed by a Licensed Health Care Practitioner[.]" It's undisputed that Hartnett was not receiving benefits under her policy when she requested an alternative plan of care, so this condition was not met. Jackson National was therefore entitled, under the express terms of her policy, to deny her home health care claim. That its decision put Hartnett in a difficult position—entering a nursing care facility and risking illness, or forgoing coverage—is undeniable. But the district court correctly found that there was no contractual violation.

AFFIRMED

RIPPLE, *Circuit Judge*, dissenting in part. I respectfully dissent from the panel majority's decision to affirm the grant of summary judgment to Jackson National.

**A.**

Deciding whether the Nursing Care Policy is a long-term care insurance policy that provides benefits for home health care services requires us to interpret, as a matter of first impression, state law. No other court, state or federal, has interpreted the Illinois administrative code section in question.[1]

The question here certainly meets the threshold requirements for certification established by Illinois. Supreme Court of Illinois Rule 20(a) permits us to certify questions "as to the law of [Illinois], which may be determinative of" the case at issue, so long as there are no controlling precedents in the decisions of the state courts.

---

[1] While other courts around the Country have addressed questions involving alternative plan of care provisions, those cases did not consider whether the benefits contemplated by alternative plan of care provisions constitute "benefits" as defined by state law. *See Mansur v. PFL Life Ins. Co.*, 589 F.3d 1315, 1320 (10th Cir. 2009) (addressing a dispute between the insured and insurer over whether an alternative plan of care provision required the parties to agree on the payment terms due under the provision before an agreement could be reached to pay benefits); *Roland v. Transamerica Life Ins. Co.*, 570 F. Supp. 2d 871 (N.D. Tex. 2008) (deciding that parties must mutually agree on the terms of a written alternative plan of care pursuant to a long-term care insurance policy, which was also purchased from PFL Life Insurance Company, before the benefits contemplated by the parties in negotiations can be paid), *aff'd*, 337 Fed. App'x 389 (5th Cir. 2009). The Illinois administrative code provision does not address whether the benefits contemplated by an alternative plan of care provision should be categorized as benefits provided by the policy.

The question is also outcome determinative. To be outcome determinative for purposes of certification, the question at issue need not be the sole question determining a party's success and failure. *See, e.g.*, *Johnson v. Amazon.com Servs. LLC*, 142 F.4th 932, 944 (7th Cir. 2025). We certified a question about whether standards from the federal Portal-to-Portal Act of 1947 (PPA) applied to the case. *Id.* at 943. If the PPA applied, then the plaintiffs' state minimum wage claims failed. If the PPA did not apply, the claims could survive under a different standard. "The answer to the question [was] thus dispositive" of whether their claims could survive dismissal, even though the parties disputed *which* standard would apply to the claims in the PPA's absence. *Id.* at 944.

Here, whether the Nursing Care Policy provides health care benefits under Illinois's administrative code is dispositive of whether Mrs. Hartnett's claim can survive summary judgment. The administrative code provision prohibits a long-term care insurance policy from requiring that the claimant first receive nursing services in an institutional setting before home health care services are covered, *if* that policy "provides benefits for home health care or community care services." Ill. Admin. Code tit. 50, § 2012.70(a)(2). Mrs. Hartnett's policy states that Jackson National "will pay" the alternative plan of care benefit if she met five preconditions:

> 1. You are receiving benefits under this policy pursuant to a plan of care prescribed by a Licensed Health Care Practitioner; and

> 2. You, your Licensed Health Care Practitioner and we agree that an Alternative Plan of Care is: (a) medically acceptable; and (b) the most cost

efficient manner in which to provide benefits for your claim under this policy; and

3. You have not exceeded the Benefit Period or Maximum Total Lifetime Benefit shown in the Benefit Schedule; and

4. You have satisfied the Elimination Period shown in the Benefit Schedule; and

5. You are not receiving payments for any other benefits under this policy.[2]

Jackson National concedes that only the first two "contractual preconditions" are material for this lawsuit.[3] The district court addressed only the first. It decided that Mrs. Hartnett had not met the first precondition because Mrs. Hartnett was not currently receiving benefits for a stay at a nursing care or assisted living facility.[4] It did not decide whether Mrs. Hartnett receiving care through home health services was medically acceptable and more cost-efficient than in a nursing facility.

In short, if the Supreme Court of Illinois determines that the administrative code prohibits Jackson National from refusing to pay for home care on the ground that Mrs. Hartnett was not first in a nursing home or assisted living facility, the company will be precluded from predicating non-payment of benefits on her lack of residence in a nursing or assisted living

---

[2] R.32-1 at *8.

[3] Appellee's Br. 24.

[4] Other benefits were available, such as a "Bed Reservation Benefit," but that, too, was conditioned on Mrs. Hartnett receiving benefits for "Nursing Care" under her policy.

facility. It will have to justify its denial on the grounds set forth in the second condition set out above.

**B.**

Having confirmed that this case meets the threshold requirements, I next consider whether, under our case law, it is an appropriate candidate for certification. "Federal courts may ascertain the content of state substantive law while sitting in diversity, but we sometimes certify a question of state law based on several factors." *Finite Res., Ltd. v. DTE Methane Res., LLC*, 44 F.4th 680, 685 (7th Cir. 2022). "The most important factor in deciding whether to grant certification is 'whether we feel genuinely uncertain about an issue of state law.'" *Johnson*, 142 F.4th at 943 (quoting *Finite Res.*, 44 F.4th at 685). Other factors "include whether (1) the case concerns a matter of vital public concern, (2) the issue is likely to recur in other cases, (3) the question to be certified is outcome determinative of the case, and (4) the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *Id.*

The most important factor—uncertainty—runs through this case. The administrative code section states that a

> long-term care insurance policy or certificate may not, if it provides benefits for home health care or community care services, limit or exclude benefits […] [b]y requiring that the insured/claimant first or simultaneously receive nursing and/or therapeutic services in a home or community or institutional setting before home health care services are covered[.]

Ill. Admin. Code tit. 50, § 2012.70(a)(2). This language produces multiple uncertainties. The section does not mention alternative plan of care provisions, so it is unclear whether the Illinois legislature views such provisions as benefits in themselves. Moreover, the administrative code section does not define "benefits," generally. Therefore, we cannot analyze whether the code's understanding of "benefits for home health care or community care services" extends to the benefits contemplated by an alternative plan of care provision. As for the Nursing Care Policy, it does not define "benefits," either, but it does identify the alternative plan of care provision as a "benefit."[5] Also, the benefit schedule describes the "alternative plan of care" as "[b]enefits for medical or non-medical Qualified Long Term Care Services payable to end confinement in a Nursing Care Facility and continue recovery at home."[6]

Jackson National contends that the home health care services contemplated by the alternative plan of care provision in Mrs. Hartnett's policy cannot be a "benefit" provided by the policy because the policy does not guarantee that it will provide home health care. To Jackson National, "home care was just one possible care setting among many that were prospectively available, meaning it was a variable benefit as opposed to a true home care benefit."[7] But every benefit in Mrs. Hartnett's insurance policy was subject to up to six conditions each.[8] And the policy as a whole listed another eight

---

[5] R.32-1 at *8.

[6] *Id.* at *5.

[7] Appellee's Br. 24.

[8] R.32-1 at *7–8.

"general exclusions" from coverage, along with a pre-existing conditions limitation and an elimination period—of which Mrs. Hartnett's was "none."[9]

Notably, the alternative plan of care provision in Mrs. Hartnett's policy differs from similar provisions addressed by other courts. In *Mansur*, the Tenth Circuit wrote that the plaintiff's construction of the policy, which had an alternative plan of care provision, was "inconsistent with the flexibility inherent in the concept of an alternate plan of care." 589 F.3d at 1320. But the provision in *Mansur* differed from the provision in Mrs. Hartnett's policy. The *Mansur* alternative plan of care provision stated

> If an Insured Person is confined in a Long Term Care Facility and is receiving benefits under this Certificate, *We will consider, instead*, paying benefits for the cost of services provided under a written, medically acceptable, alternate plan of care.
>
> *The alternate plan of care*:
>
> (1) can be initiated by the Insured Person or by Us;
>
> (2) must be developed by health care professionals;
>
> (3) must be consistent with generally accepted medical practices; and
>
> (4) *must be mutually agreed to by the Insured Person, the Insured Person's Physician and Us*.

---

[9] *Id.* at *9, *5.

*Id.* at 1319 (first emphasis added). So, too, did the alternative plan of care provision in *Roland*. 570 F. Supp. 2d at 874 ("If an Insured Person is confined in a Long-Term Care Facility and is receiving benefits under this Policy, *We will consider*, instead, paying benefits […]." (emphasis added)).

Here, however, Mrs. Hartnett's alternative plan of care provision does not say that Jackson National "will consider" paying benefits if she met the enumerated conditions. It says, "[w]e will pay the Alternative Plan of Care Benefit if" Mrs. Hartnett met the five listed requirements.[10] One of those requirements provides Jackson National discretion to agree that the home care services are medically acceptable and the most cost efficient manner of providing benefits, but the district court did not decide whether Mrs. Hartnett established those requirements. Jackson National's letter denying her claim does not mention those issues, either. It says instead that her policy does not provide home care benefits and home care benefits were not available to her because "the Policy requires you to be confined to Nursing Care Facility [sic] and receiving benefits under the policy, pursuant to a plan of care provided by a Licensed Healthcare Professional."[11]

Taking all of these issues together requires me to conclude that it is genuinely uncertain whether the administrative code considers the benefits contemplated by an alternative plan of care provision to be the benefits provided by the policy itself.

---

[10] *Id.* at *8.

[11] R.35-8 at 2.

## C.

Another strong reason to certify a case to the state supreme court, besides uncertainty, is that the issue is "likely to recur rather than unique and fact bound." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1166 (7th Cir. 2021). Also, if the law is a "unique Illinois statute regularly applied by the federal courts," and "one that the Illinois Supreme Court has shown an interest in interpreting," then certification is more appropriate. *Id.* Here, Illinois's long-term care provision is adopted from a model insurance code that has been adopted by other states. *See, e.g.*, 210 Neb. Admin. Code ch. 46, § 0010.01(B); Idaho Admin. Code R. 18.04.11.016; 31 Pa. Code § 89a.111(a)(2). In that sense, the code is not unique. But, the Supreme Court of Illinois has not interpreted the meaning of § 2012.70(a)(2) and has issued only one decision that even mentions long-term care insurance policies. *See Hines v. Dep't of Pub. Aid*, 221 Ill. 2d 222, 233–34, 850 N.E.2d 148, 155 (2006) (limiting the ability of the state to obtain reimbursement for payments made under the Medicaid Act but noting that no long-term care insurance policy was at issue).

Deference to the Supreme Court of Illinois is also appropriate because the regulation of insurance has historically been a matter for the states to manage. The McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, was passed in 1945 to "restore the supremacy of the States in the realm of insurance regulation." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 40 (1996) (quoting *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 500 (1993)). We need to respect this basic policy determination. Rather than having a federal court interpret a state insurance code about which there is uncertainty, I would instead certify this question to the Supreme Court of Illinois.

We should respect the prerogative and obligation of Illinois to take the lead in regulating this industry.